IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **JONATHAN EHRENFELD,** *et al.*, | * |
| Plaintiffs, | * |
| v. | *   Civil Case No. 1:23-00605-SAG |
| **ELIEZER DAVID NEGER,** | * |
| Defendant. | * |

************

## MEMORANDUM OPINION

Plaintiffs Jonathan Ehrenfeld ("Ehrenfeld"), Blue Ocean Realty, LLC ("Blue Ocean"), JE Manager LLC, and 8211 TC Manager LLC (collectively, "Plaintiffs") filed an amended complaint seeking a declaratory judgment against Defendant Eliezer David Neger ("Neger"). ECF 10. Essentially, Plaintiffs ask this Court to declare that certain "claims" between the parties "must be adjudicated exclusively by the Baltimore Bais Din.[1] Neger filed a motion to dismiss or, in the alternative, for summary judgment, ECF 11, and Plaintiffs opposed and countered with a cross-motion for summary judgment. ECF 15, 16. All motions have been fully briefed. ECF 15, 19, 20. This Court has reviewed the filings and concludes that the issues presented in these motions are adequately addressed in the parties' briefings, rendering a hearing unnecessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons that follow, Neger's motion, ECF 11, treated as a motion for summary judgment, is granted, and Plaintiffs' cross-motion, ECF 16, is denied. Judgment will be entered for Neger because the requested declaratory judgment is unwarranted.

---

[1] From the parties' briefing, this Court understands that the Bais Din is a group of arbitrators applying Jewish law to resolve disputes among members of Baltimore's Jewish community.

1

**I.     FACTUAL BACKGROUND**

The following facts are derived from the First Amended Complaint, ECF 10, and the exhibits attached to the parties' summary judgment briefing. Ehrenfeld and Neger both are members of a large number of LLCs owning various real estate investments. *Id.* ¶¶ 4, 6. Neger is not involved in the management of any of the entities. The parties are presently embroiled in a variety of disputes, some of which have been ongoing for years. *Id.* ¶ 5.

On July 1, 2020, Plaintiffs, Neger, and several of the other LLCs entered into an Access, Confidentiality, and Non-Disclosure Agreement ("the Access Agreement"). ECF 1-1. The Access Agreement, in relevant part, requires Plaintiffs and their related LLCs to provide Neger with access to review the books and records of those LLCs, under specified conditions. *Id.* at E-1. The reviewed information is deemed confidential and Neger's dissemination and use of the information received through such reviews is limited to specific purposes. *Id.* at E-2. The parties to the Access Agreement named a "Records Arbitrator," giving the Records Arbitrator "the authority to order that a particular request for books and records shall or shall not be granted." *Id.* The non-prevailing party in any dispute before the Records Arbitrator "shall be responsible for the Record Arbitrator's fees relating to the determination of that issue." *Id.* at E-3 ¶ 4.6.

The Access Agreement continues:

> Should Blue Ocean or the Managers/Owners of the Companies whose books and records are the subject of any determination by the Records Arbitrator fail to comply with any order of the Records Arbitrator, the Parties agree that Neger would incur substantial economic damages of types and in amounts that are impossible to compute and ascertain in certainty, and that liquidated damages represent a fair, reasonable, and appropriate estimate thereof. Accordingly, upon failure to comply with any such order, the noncompliant Party shall be liable for such liquidated damages . . . without any requirement that Neger must present evidence of the amount or character of actual damages sustained. Such liquidated damages are intended to represent estimated actual damages and are not intended as a penalty.

*Id.* at E-3 ¶ 4.7. The immediately following section is entitled "Litigation" and states:

> In the event that any Party determines that it has claims against another Party and wishes to pursue any claim(s) or take any adverse action against the other Party ("the Claim(s)"), . . .[following a notice and conference procedure consisting of good faith efforts to resolve the dispute], the claiming Party shall be entitled to pursue his Claims exclusively through the Baltimore Bais Din (the "Bais Din") and not take any adverse action against the other Party without the express permission of the Bais Din.

*Id.* at E-3 ¶ 5.1. The Agreement itself is signed by Neger and by Ehrenfeld, on behalf of himself and as manager of a number of LLC entities, including the Plaintiff entities. *Id.* at E-5–E-7.

On March 3, 2023, an attorney for Neger wrote to an attorney for Plaintiffs, captioning the letter "Re: Resolution of Outstanding Issues." ECF 10-1. The letter says, "I write in an effort to rekindle settlement discussions between my client and Mr. Ehrenfeld regarding a number of issues that have been dormant since April 2022." *Id.* at 2. The letter contains a settlement proposal requiring Ehrenfeld (1) to make payment "in satisfaction of all management fees, distributions, and sales proceeds owed to Eli Neger as of December 31, 2022," (2) to agree not to pursue certain claims for personal liability against Neger; (3) to provide "unlimited and unfettered access to all items" previously governed by the Access Agreement; (4) to pay Neger certain shares of the proceeds of the sale of a property owned by Blue Ocean; (5) to satisfy a note related to another property; (6) to reduce the interest rate on personal loans Ehrenfeld made to certain entities; (7) to resign as manager of any LLCs to which Neger is a member; and (8) to agree to toll limitations as to certain claims. ECF 10-1 at 2–3. The final sentence states, "I look forward to hearing from you in short order or my client will turn his attention to pursuing further legal action." *Id.* at 3.

In their Amended Complaint, Plaintiffs describe the March 3, 2023 letter as the "Threatened Litigation Letter" and suggest that it "outlines eight disputes between the parties." ECF 10 ¶¶ 24, 25. Plaintiffs also allege that they have certain claims they wish to assert against Neger, to include enforcement of a February 19, 2019 arbitration ruling ordering Neger to pay

3

$155,000 within 30 days; monetary claims for Neger's share in the losses of Blue Ocean; defamation claims arising out of statements Neger made to Plaintiffs' investors and lenders; and breach of fiduciary duty claims arising from Neger's refusal of consent to sell properties owned by certain LLCs. ECF 10 ¶ 21.

In Plaintiffs' view, the arbitration provision in Section 5.1 of the Access Agreement requires arbitration of all of the parties' claims against one another as they pertain to any of the LLCs.[2] Neger contends that the arbitration provision only governs claims arising under the Access Agreement itself, not any other claims resulting from the parties' extensive business ties. This lawsuit, in which Plaintiffs seek a declaratory judgment requiring arbitration of the parties' prospective claims before the Bais Din, ensued.

## II. LEGAL STANDARDS

Neger filed a motion to dismiss or, in the alternative, for summary judgment, attaching a number of exhibits. ECF 11. Plaintiffs responded with a cross-motion for summary judgment and have attached their own exhibits to their reply. ECF 16, 20. This case presents an issue of contractual interpretation and neither side appears to believe discovery is necessary for this Court to interpret the Access Agreement. Accordingly, this Court will assess the motions under the summary judgment standard, not as a motion to dismiss. *See United Services Auto. Ass'n v. Riley*,

---

[2] Plaintiffs exclude from this case's purview claims pertaining to Clarksview LCC, which is the subject of separate litigation in state court. *See Neger v. Ehrenfeld*, Case No. 24-C-22-003554 (Circuit Ct. for Balt. City, Maryland). The judge in that case already ruled that the Clarksview-related claims are not subject to the contested arbitration provision, finding that "the terms of the access agreement are narrow . . . section 5 of the access agreement is not broad enough to encompass plaintiff's asserted point – asserted claims in the litigation before the court today." ECF 19-3 at 41. While this Court agrees with that state judge's ultimate conclusion, there is insufficient analysis in the ruling from the bench for this Court to rely on it as persuasive precedent.

393 Md. 55, 78, 899 A.2d 819, 832 (2006) ("Contract interpretation is undoubtedly a question of law that may be properly determined on summary judgment.").

Rule 56(a) of the Federal Rules of Civil Procedure states that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that there is no genuine dispute of material facts. *See Casey v. Geek Squad*, 823 F. Supp. 2d 334, 348 (D. Md. 2011). If the moving party establishes that there is no evidence to support the non-movant's case, the burden then shifts to the non-movant to proffer specific facts to show a genuine issue exists for trial. *Id.* The non-movant must provide enough admissible evidence to "carry the burden of proof at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993)). The mere existence of a scintilla of evidence in support of the non-movant's position is insufficient; rather, there must be evidence on which the jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Casey*, 823 F. Supp. 2d at 349.

Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. The non-movant "must produce competent evidence on each element of his or her claim." *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999). If the non-movant fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *see also Casey*, 823 F. Supp. 2d at 348–49. In ruling on a motion for summary judgment,

a court must view the facts and inferences "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

**III.   ANALYSIS**

The parties' dispute centers on the scope of the arbitration provision in the Access Agreement. When interpreting an arbitration clause, federal courts look to the "general state-law principles of contract interpretation," while giving "due regard [to] federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Cara's Notions, Inc. v. Hallmark Cards, Inc.*, 140 F.3d 566, 569 (4th Cir. 1998). Accordingly, this Court will apply Maryland's standard principles of contractual interpretation. As always, the analysis of a contract begins with its plain language. "Maryland follows the law of objective contract interpretation." *Sy-Lene of Washington, Inc. v. Starwood Urban Retail II, LLC*, 376 Md. 157, 166, 829 A.2d 540 (2003). Under that standard, "[t]he written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered into the contract." *Long v. State*, 371 Md. 72, 84, 807 A.2d 1 (2002) (alteration in original) (quoting *Slice v. Carozza Props., Inc.*, 215 Md. 357, 368, 137 A.2d 687 (1958)).  Where a contract's language is unambiguous, a court can determine the meaning of the terms as a matter of law. *See Clendenin Bros., Inc. v. U.S. Fire Ins. Co.*, 390 Md. 449, 459, 889 A.2d 387 (2006).

With respect to arbitration provisions in particular, courts employ a "presumption of arbitrability," meaning that arbitration is ordered "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Waterford Inv. Servs., Inc. v. Bosco*, 682 F.3d 348, 353 (4th Cir. 2012) (quoting *AT&T Techs., Iv. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)). However, "[a] party cannot be required to

submit to arbitration any dispute which he has not agreed so to submit." *Levin v. Alms & Assoc., Inc.*, 634 F.3d 260, 266 (4th Cir. 2011) (internal quotations omitted).

The parties are generally in accord with Plaintiffs' initial premise that the Access Agreement discusses "two separate matters: (1) the 'review' of books and records and (2) 'claims' by the parties." ECF 16 at 5. And it is beyond dispute that the Access "Agreement provides for different arbiters – a Records Arbitrator and the Baltimore Bais Din, for each category of disputes." *Id.* But those distinctions do not answer the operative question, which is whether the "claims" category of disputes is restricted to claims arising under specific provisions of the Access Agreement, or, is drawn more broadly to include any substantive claims pertaining to any of the LLCs and their records.

The Access Agreement includes several provisions describing prospective "claims" that are outside the limited scope of determinations assigned to the Records Arbitrator. For example, there could be disputes about violations of the confidentiality or use provisions of the Access Agreement, Neger could assert a liquidated damages claim under the Access Agreement's provisions, or either party could assert an entitlement to fees relating to a dispute before the Records Arbitrator. Thus, there are specific "claims" under the terms of the Access Agreement to which the arbitration provision would apply.

The plain language of the Access Agreement contains no suggestion that Section 5.1 was intended to apply beyond the Access Agreement's limited scope. First, the title of the Access Agreement is "Access, Confidentiality and Non-Disclosure Agreement." ECF 1-1 at E-1. If the agreement intended to provide an arbitration provision that would affect a wide swath of the parties' disputes, the title presumably would have reflected the inclusion of that provision. Second, Section 5.1 contains no language expressly broadening its scope beyond the Access Agreement

itself. *Cf. Mey v. DIRECTTV*, 971 F.3d 284, 287 (4th Cir. 2020) (arbitration clause drafted to cover "all disputes and claims between us . . . this includes, but is not limited to . . . claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory"). In contrast, here, the Access Agreement simply says the arbitration agreement applies to "claims," without broadening the scope beyond the agreement in which the provision is contained. ECF 1-1 ¶ 5.1. This Court is unable to find "reliable evidence from the language actually employed in the contract that the parties intended the disputed issue to be the subject of arbitration, the intent of the parties being the controlling factor." *NRT Mid-Atl., Inc. v. Innovative Properties, Inc.*, 144 Md. App. 263, 280, 797 A.2d 824, 834 (2002). In the absence of any contractual language evidencing an intent to broaden the scope of the arbitration provision beyond the Access Agreement itself, the arbitration requirement is properly limited to its terms and the broader declaratory judgment sought by Plaintiffs is inappropriate.

The final issue, then, is whether any of the "claims" identified by Plaintiffs fall within the extent of the Access Agreement. As presented to this Court, they do not. None of the claims identified by Plaintiffs in Paragraph 21 of their Amended Complaint relate to access to LLC records or disclosure of confidential information from those records. And to the extent any "claims" at all are mentioned in the March 3, 2023 settlement proposal from Neger's attorney, they relate to monies owed relating to the properties and not to any provision or violation of the Access Agreement.[3] Given the narrow scope of the arbitration provision in the Access Agreement, and the

---

[3] The March 3, 2023 letter proposes, as a settlement term, that Neger be afforded "unlimited and unfettered access" to the LLC records. ECF 10-1 at 2. That term, however, is not couched as any type of "claim" that might be asserted if settlement is not reached.

unrelated nature of the disputes set forth in Plaintiffs' Amended Complaint and the March 3, 2023 letter, the declaratory relief Plaintiffs seek is unwarranted.

## IV.     CONCLUSION

For the reasons set forth above, Neger's Motion to Dismiss or in the alternative for Summary Judgment, ECF 11, treated as a motion to summary judgment, is GRANTED. Plaintiffs' Cross-Motion for Summary Judgment, ECF 16, is DENIED. Judgment will be entered for Neger and this case will be closed. A separate Order follows.

Dated: August 16, 2023                                                   /s/
                                                         Stephanie A. Gallagher
                                                         United States District Judge